# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In re: ) | |
| ) | Case No. 10-44629-can9 |
| Lake Lotawana Community Improvement ) | |
| District, ) | |
|       Debtor. ) | Chapter 9 |

## MEMORANDUM OPINION GRANTING THE DEBTOR'S MOTION TO CLOSE CASE

The court is asked to determine whether administration of this Chapter 9 case has been completed, such that, pursuant to 11 U.S.C. § 945(b), the court must close the case. The only reason this issue is remarkable is that in the meantime, the debtor has filed a second Chapter 9 case, and the secured bondholder in that case objects to closing this one. For the reasons stated below, the court concludes administration of this Chapter 9 has been completed and this case should be closed.[1]

*Background*

Lake Lotawana Community Improvement District (the "Debtor") is a sewer improvement district, the development of which was financed by certain bonds. The Debtor filed for Chapter 9 relief (the "First Case") in August 2010 in advance of the bonds' five-year maturity date. After some initial legal battles, the Debtor ultimately propounded a plan with the Bondholders' consent.[2] The plan as amended extended the maturity date of the bonds for another five years, or until July 1, 2016, and provided for semi-annual interest payments to the Bondholders in the

---

[1] No party contests jurisdiction or that the matter is core. 28 U.S.C. § 1334(a); 28 U.S.C. § 157(a) and 157(b)(2)(A).

[2] At the time, the bondholders were Lone Summit Bank and Midwest Independent Bank; the current bondholder is MI Bondholders, LLC. Wells Fargo Bank, N.A. is the Indenture Trustee.

1

interim, with a final balloon payment due on July 31, 2016. The court[3] confirmed the plan and retained jurisdiction pursuant to the plan's terms.[4]

The Debtor did not make the payment when the balloon came due in July 2016, and a month later, with new counsel, filed a second Chapter 9 case, Case No. 16-42357 (the "Second Case"). The court raised the issue of what to do with the First Case during an initial conference in the Second Case. After six months of legal wrangling with the current Bondholder and Indenture Trustee (collectively, the "Bondholder") and their new counsel on various other legal issues in the Second Case, the Debtor finally filed a motion to close the First Case. The Bondholder, however, objects to the motion to close the First Case, and has also filed a motion to dismiss the Second Case, arguing that a debtor cannot have two cases pending at the same time, among other arguments. At a status hearing with respect to both motions, the parties agreed to waive their rights to present evidence and submit the Debtor's motion to close the First Case on the briefs; the Bondholder's motion to dismiss the Second Case will be taken up at a later date. The motion to close is now fully briefed and ready for decision.

*Discussion*

In support of its motion to close, the Debtor argues that because there is nothing in the First Case to administer, § 945(b)[5] mandates closure. The Debtor also analogizes closure of a Chapter 9 to the concept of a case being "substantially consummated" or "fully administered" in Chapter 11, and argues that the various factors courts apply in determining when a Chapter 11 is

---

[3] The Honorable Jerry Venters presided over the beginning of the First Case, and then retired in 2013. The Eighth Circuit designated and assigned this judge to the case on May 8, 2014.

[4] The court held a status conference in May 2014 to determine whether the case should be closed, and counsel for the Debtor and the Bondholders both requested the court retain jurisdiction at least until the end of the five-year plan period.

[5] All further statutory references are to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

2

"fully administered" all strongly support closure of the First Case.[6] The Bondholder in turn argues that these Chapter 11 concepts do not apply in a Chapter 9 case, and that even if they do, the First Case has not been "fully administered," given that the Debtor has failed to make the balloon payment called for in the plan. The Bondholder also argues that this court should continue to retain jurisdiction of the First Case under § 945(a)[7] until the plan can be "successfully implemented." Although the court does not agree with the Debtor that Chapter 11 concepts should apply in deciding this issue, the court concludes that the First Case must be closed, for several reasons.

The court first starts with the pertinent statute. Section 945(a) provides that the bankruptcy court "may retain jurisdiction over the case for such period of time as is necessary for the successful implementation of the plan." Subsection (b) further provides that "[e]xcept as provided in subsection (a) of this section, the court shall close the case when administration of the case has been completed." 11 U.S.C. § 945(b). Thus, retaining jurisdiction over a confirmed Chapter 9 case is within the court's discretion, but when administration of the case has been completed, the court must close the case.

The Code does not define, however, when "administration of the case has been completed," nor is there a Rule[8] implementing § 945. As noted above, the Debtor urges the court

---

[6] The Debtor cites to the factors in the 1991 advisory committee notes to Rule 3022. The nonexhaustive list includes: (1) whether the order confirming the plan has become final, (2) whether deposits required by the plan have been distributed, (3) whether the property proposed by the plan to be transferred has been transferred, (4) whether the debtor or the successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan, (5) whether payments under the plan have commenced, and (6) whether all motions, contested matters, and adversary proceedings have been finally resolved. *See, e.g, In re Johnson,* 402 B.R. 851, 856 (Bankr. N.D. Ind. 2009).

[7] The court finds the Bondholder's additional arguments regarding two pending cases, preclusion principles, and good faith concerns are not relevant to a determination of whether to close a case pursuant to 11 U.S.C. § 945. Rather, these arguments are more appropriately left to be determined in connection with the pending Motion to Dismiss, Motion for Relief from Stay, or at the confirmation hearing in the Second Case. Thus, the court will not address these arguments here.

[8] Reference to "Rule" means Federal Rules of Bankruptcy Procedure.

to analogize the completion of administration in § 945(b) to the concept of "substantial consummation" of a plan as defined in § 1101(2) and used in § 1127(b) and (e). These provisions, however, are not applicable in a Chapter 9. *See* § 901 (setting forth sections of title 11 that apply in a Chapter 9 proceeding).

Similarly, Rule 3022 provides that "[a]after an estate is fully administered in a chapter 11 reorganization case, the court . . . shall enter a final decree closing the case." A crucial difference between Chapter 11 and Chapter 9, however, is that there is no estate in a Chapter 9 to "fully administer." *See* § 901 (Section 541, defining and addressing property of the estate, does not apply in a Chapter 9); § 904 (providing that absent consent by the debtor, the court may not interfere with any property of the debtor nor with the debtor's use or enjoyment of its property). Rule 3022's governance of when a Chapter 11 *estate* has been "fully administered" is thus not relevant to completion of administration of a Chapter 9 *case* pursuant to § 945(b). Debtor's analogy to Chapter 11 thus does not hold up.

Returning to § 945(b) then, cannons of statutory construction require that when Congress does not define a term, courts must give it its ordinary meaning. *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012). Black's Law Dictionary defines "administration" as the "judicial action in which a court undertakes the management and distribution of property." BLACK'S LAW DICTIONARY 49 (9th ed. 2009).

Under this definition, the court has nothing to manage in the First Case. The Plan by its terms expired July 31, 2016. While the Plan purported to reserve the Debtor's right to modify the plan post-confirmation,[9] § 942 only authorizes plan modification before a plan is confirmed.[10]

---

[9] Language in the Plan regarding modification before "substantial consummation" is not enforceable. *See* § 901 (§ 1127(a) – (c) do not apply in a Chapter 9).

[10] The court notes that there is a split of authority regarding post-confirmation plan modification. Some courts have adopted a *per se* rule, concluding that the absence of authority to modify a plan post-confirmation was

4

Thus, with nothing left to manage and no practical ability to approve modification of the confirmed plan, the court concludes administration of the First Case has been completed, such that the court "shall close" this case.

This interpretation of § 945(b) is in line with the only case the court found interpreting § 945(b). In *In re Lake Grady Road. & Bridge District*., 119 B.R. 844 (Bankr. M.D. Fla. 1990), the confirmed Chapter 9 plan incorporated a contract providing that a creditor would furnish all funds necessary to consummate the plan. In exchange, the debtor agreed to convey its assets to the creditor free and clear of all liens, encumbrances, and claims or interests of creditors. The plan also required the creditor to provide a maintenance bond for a certain dam.

The creditor made payments to consummate the plan but failed to procure the dam maintenance bond. In response, the debtor refused to transfer its assets to the creditor. The debtor paid all but three claims and sought to close the case, arguing the plan was substantially consummated. The creditor objected, contending that the plan had not been substantially consummated as a result of the debtor's failure to transfer its assets to the creditor. Also pending at the time was the creditor's motion to compel the debtor to perform its contract and an adversary proceeding requesting transfer of the assets.

The bankruptcy court held that because the contract provided the "very essence and underlying basis" for the debtor's confirmed plan, administration of the case could not be completed where there was a breach. *Id*. at 847. In addition, the confirmation order expressly reserved jurisdiction for the purpose of determining questions and disputes regarding construction of the confirmation order and plan. *Id*.

---

intentional, and thus, is prohibited. *See, e.g., In re East Shoshone Hosp. Dist*., No. 98-20934-9, 2000 WL 33712301 (Bankr. D. Idaho Apr. 27, 2000). Other courts have allowed post-confirmation modification under narrow circumstances. *See In re Barnwell Cty. Hosp.*, 491 B.R. 408 (Bankr. D S.C. 2013) (allowing the debtor to modify the confirmed plan by substituting a purchaser after the approved sale in the confirmed plan failed to close). Here, the court need not adopt a position because modification of the plan is not at issue.

5

Here, there are no questions regarding construction of the confirmation order or plan. With the exception of the Debtor's motion to close, there are no pending matters in the First Case. Unlike the *Lake Grady Road* case, the Bondholder has not filed a motion to compel enforcement of any plan provisions and any such motion would be futile, in any event, given the pendency of the Second Case. In sum, the court concludes that administration of this case has been completed, and that the case should be closed.

## *Conclusion*

The Debtor's Motion to Close is granted; the Bondholder's Objection is overruled. A separate order closing the case shall issue.

Dated: _May 11, 2017_____

                                           _/s/ Cynthia A. Norton_____
                                           JUDGE CYNTHIA A. NORTON
                                           United States Chief Bankruptcy Judge